Good morning. We'll hear argument first this morning in number 2009-31-20, Chambers v. Interior, and I think we'll hear first from Ms. Dinerstein. Good morning, your honors. My name is Paula Dinerstein, and I am representing Teresa Chambers, the appellant. Teresa Chambers, as chief of police, disclosed that severe budget limitations were causing critical shortfalls in her force's ability to protect the parks, the parkways, and the national monuments that were under her jurisdiction. Three days later, she was called in, she was relieved of her police duties, her badge, her gun were taken, and she was escorted out of the building by armed special agents. The board's decision finding this removal approved would seriously undermine the purposes of the Whistleblower Protection Act to encourage safety disclosures by law enforcement officials, and particularly officials like Chief Chambers, who was in a high position and had the experience, the knowledge to know, to be able to make very credible disclosures that were of great importance to the public. So if Charge 2 is not sustained, everybody agrees that we have to set aside the penalty of removal, right? Either Charge 2 or Charge 3. Both of those charges involved statements to the Washington Post. Charge 2 was the one where Chairman McPhee found some of the disclosures protected. Well, suppose we were to agree that he was correct about that, and that that was a basis for the board's decision. If some of the disclosures in Charge 2 were protected and some were not, where do we stand? Well, first of all, I mean, we would argue that they were all protected, but even assuming that he was correct and that only some of them were protected, because the deciding official said that unless all of these three charges are upheld, I would have not imposed the penalty of removal. We don't think that the penalty of removal can stand if any of the disclosures underlying those charges are protected, that at least needs to go back and be reconsidered. Judge Dike is saying Chairman McPhee upheld Charge 2 after finding only some of the disclosures in Charge 2 protected. Now, I think it's clear that if Charge 2 falls out that there's a problem for the agency, but does Charge 2 fall out if some of the disclosures are upheld as non-protected? Well, Chairman McPhee held that the remaining charge, which had to do with the staffing levels on the National Mall, remaining disclosure I should say, was not protected, and that Charge 2 could stand alone on that. Yeah, that's what I understood Judge Dike to be getting at. Right, and we dispute that, but in addition to whether or not the penalty could stand given the deciding official's statement that all of those charges had to be upheld, whether he would have upheld it if two out of the three statements were found protected, seems questionable and should at least require a remand. The issue, I think what we're trying to ask about is, let's assume that Chairman McPhee is correct that two of the statements were protected in Charge 2 and that one of them was not. So if that's the situation, do we have to set aside Charge 2? There are a whole line of cases, including LeChance, that suggests that if part of a charge is sustained and part is not, and the items are not set forth in separate specifications, that the whole charge has to fall. And does that rule apply here? Is there a reason why that general approach to setting aside a charge where part of the charge isn't sustained should not apply here? Well, I believe it should apply. I mean, there were not separate specifications, and these disclosures, they were all statements to the Washington Post. Chairman McPhee sort of picked them apart and said, well, this little part about the mall isn't protected, but this part about the parkway is protected. But it was one charge, and I believe that the whole charge should fall. And the other question that is raised is that once you find any protected disclosures at all, the agency has this burden to prove by clear and convincing evidence that it would have taken the same action anyway. So even if part of that charge remained, the burden would still be on the agency to come forward with clear and convincing evidence. And in this case, that cannot be done. There was no actual board opinion on the clear and convincing evidence part of it because Vice Chair Rose didn't rule on it at all. And Chairman McPhee's concurring opinion, if you're even going to consider that an opinion of the board on the clear and convincing evidence, cannot stand because he did not give the high standard of proof that Congress intended for that once a whistleblower is established to have made a claim. He basically, in finding that there was clear and convincing, or finding that the agency had met its burden, he basically, I guess, relied on, or he said, I adopt the 2004 administrative judge's decision. Isn't that what he did? Yes. And the administrative judge's decision, this court has directed, and the board itself has directed, that there's certain factors you have to consider on a clear and convincing finding. That the fact that the charges were sustained on a preponderance doesn't mean the clear and convincing was met. And the agency has to prove that not only could it have taken the action, but it would have if the person were not a whistleblower. Now, what he relied on in the administrative judge's opinion was a simple, on the factor of the strength of the evidence, it was literally one sentence where she said, the agency could have relied on the strength of the evidence. There was no support in the record. If she was meaning to say, well, the rest of my opinion is the support, where I sustain the charges, then she made a legal error, because this court and the board have ruled that merely sustaining the charges is not enough to reach the clear and convincing standard. You're saying, under, I guess, the Carr test, you have to look to the strength of the evidence supporting the charges. Right. The strength of the evidence is one, the motive to retaliate, and whether or not any other non-whistleblowers were treated in the same fashion. Now, that third standard, everybody admits, there's nothing, no evidence in this case. As to the retaliatory motive, she found that there was no retaliatory motive solely based on the fact that the proposing official, the deputy of the Park Service, Mr. Murphy, was not mentioned in the disclosures, and therefore he wouldn't have a motive to retaliate. That was all she based it on. It didn't look at the fact that he was the proposing official, there was also a deciding official, it didn't look at the fact that he had responsibility for the Park Service, excuse me, the Park Police, and so therefore these disclosures that the Park Police couldn't fulfill its mission would reflect on him, and it completely ignored very powerful evidence in the record of retaliation. But do we even have to, if we were to hold that part of the charge was bad, and that you can't sustain a charge if part of it is bad, do we have to even reach this question of clear and convincing evidence that they would have removed her anyway? No, I don't think you would, because I think in that case, given the testimony of the deciding official, the penalty could not stand. So, there would be two alternate ways to reach that conclusion. And that is because you say that if any one part of charge two falls, then all of charge two automatically falls? Is that your view? Yes, and what I'm saying is that in the alternative, they have to meet the clear and convincing evidence. If part of the charge falls because it's protected activity, then the clear and convincing evidence comes into effect and discipline can't be based on the protected activity, and the existence of protected activity taints the whole rest of the decision, and they have to meet this very high standard that they would have taken the action anyway. So, in addition to what I've mentioned already about the motive to retaliate, I believe that the motive to retaliate in this record is so strong, and the strength of the evidence part of it had no record support behind it, and the third factor isn't there at all. The motive to retaliate is extremely powerful here because two of the sustained charges were based explicitly on Ms. Chambers' statements to the Washington Post. If we have to reach that question, that is the question whether they would have taken the same action anyway, where do we stand since the vice chair didn't reach that question? We don't know what the vice chair's view is on that issue. Right. There's no board opinion, and there's no board rationale, and there is something to be said that perhaps that question should be remanded without even being considered because you don't have a decision to review. I'm not sure that that is the case. I guess if we could sustain both opinions, we certainly wouldn't remand, right? If you sustain both opinions? Yeah. If we sustain the rationale of both opinions. Well, the opinions are contradictory on the protected activity. I guess you could sustain the part of one that says there was this protected activity, and then the other one that says they wouldn't have removed her anyway. They would have removed her anyway. They would have removed her anyway, excuse me. So, what I had wanted to say about the motive to retaliate is that once you have any protected activity, which is the basis for a charge, which is the case with charges two and three, if any protected activity is found based on the Washington Post statements, then you have, by definition, the agency has retaliated for protected activity, has taken disciplinary action based on it. The other two charges that were brought were based on incidents that happened three to six months earlier, and there was absolutely no discipline at all taken at that time. So, it appears that not only wouldn't removal have been based on the non-protected activities, but no discipline would have been based on the non-protected activities, and all of a sudden, three days after the Washington Post and the communication with the staffer, she's removed based on these things that nothing was done about at all before. And the final factor on retaliation is the way that they did it. Based on some statements to the Washington Post about budgeting and staffing, they took her in, removed her police powers, sent her out of the building with armed guards. This was way above and beyond what would have been merited by the kind of charges that were brought, that she made some statements to the newspaper, that she didn't follow instructions of her supervisors, mainly on personnel matters. Her deputy testified that nobody loses their police powers unless they have made some serious violation of the law or conduct that makes them unfit to serve the public. This was far from that. Everything here indicates that this action was taken in retaliation for her protected activity. You're into your rebuttal time. Do you want to save that? I'll save that unless you have further questions. We'll restore the rebuttal time. Thank you.  Good morning, Your Honors. May it please the Court, Barbara Sheehy for the National Treasury Employees Union, NAMICAS in this case. I want to follow up on a point that Judge Dyke raised and that my colleague briefly touched on. And that's that first, let's assume that the Court finds that there were, agrees with Judge McPhee that there were protected disclosures, but charge two is still going to stand. So for purposes of what I'm saying here, let's assume that's the case. Then you kick into the analysis of whether or not she would have been removed in any event. And you're right, Judge Dyke, you rightly point out that there is, in fact, not a board decision on that issue. You have a single board member, Judge McPhee, issuing a decision that she would have been terminated in any event. You have Vice Chair Rose expressly passing on the issue. And you have a suggestion by the government that must be rejected, which is that the AHA's decision on this should be the finding then of the board. I'm not clear. So just because there was a split decision from the board, I mean, often we'll reverse the entire board. Even if the board unanimously said in this case or in another case, all of it is protected. We have the authority to reverse that, in other words, reach a conclusion different than any board member. So why are we somehow constrained? Absolutely, absolutely. This court has the authority to do that. But the problem in this case is you don't have a split decision. You effectively have one board member ruling on the issue. And that's it. So you don't have a board decision split or otherwise, 2-0, 3-0 or 2-1, on the issue of whether she would have been terminated in any event. And by operation of MSPB regulation, the only time the AHA's decision becomes the final decision of the board is when the board itself, for lack of a quorum or lack of a majority, splits on the disposition of an appeal, not an issue. There's no regulatory authority for adopting piecemeal decisions of the AHA. So all you have here is one member of the board, at this time a board of two, passing a ruling on the issue of would she have been terminated in any event. So it's our position that if the court... But what if here, what if both members or all three members were to agree with Chairman Rose and to have concluded that there was no protected activity? And it comes up here on appeal, and we disagree. We find, as Mr. McPhee did, that a couple of these were protected. If the AHA in this instance had found that there was clear and convincing evidence that the action would have been taken in any event, wouldn't we have the ability, would we have to remand it so that the board could make that finding in the first instance? Or couldn't we affirm an AHA finding in that regard, even though the board, nobody on the board, had ever reached that issue? I believe that there's no authority for you to adopt the decision of the administrative judge. That once if the board... What you're reviewing is the board's decision that she didn't... In your example, what you're reviewing is the board's finding that she didn't make any protected disclosures. So there's no decision for you to review, and there's no regulatory authority to indicate that the appropriate... Once you determine, okay, she was a whistleblower, the board got that wrong, and now let's look at what the AHA did in terms of the alternative argument that the clear and convincing evidence that she would have been removed absent the disclosures. Absolutely. I think the appropriate remedy in that case is you vacate the board's decision, and you say, you got it wrong. She was a protected whistleblower. Now engage in the analysis under the facts and the record, taking into account what the AHA said and looking at that, review that and determine whether or not she would have been removed in any event. I don't believe there's any authority to substitute the judgment of the board when it didn't do the analysis that you would indicate that it needed to, that there's any authority for this court to say the AHA's decision stands. I believe remand and direction to the board with specific instructions on what to address would be appropriate in that instance. Well, unless we find that both board members' opinions can be sustained. Even though they're inconsistent, I mean, agencies can reasonably reach different results. So if we were to say, well, Vice Chairman Rose's decision finding no protected activity was reasonable, we could sustain that if that were the board decision, and we can also sustain Chairman McPhee's decision that she would have been removed in any event. In fact, what the board would be doing, if you affirm Vice Chair's Rose opinion, then you find as a matter of fact that she was not a whistleblower. So then you're absolutely right. You would affirm Vice Chair's opinion that she's not a whistleblower, and then there's no analysis beyond that. If she's not a whistleblower, you don't get into the analysis. I'm not so sure about that. I think if we could sustain both opinions, the rationale of each opinion, we could sustain it. This came up in Chorus, which is one of our past cases. Anyway. The other issue that I wanted to touch on was that, and it's related to an argument that we made in the brief, and it's another issue that Justice Schall and Judge Dyke brought up, in that if part of Charge 2 falls, what happens? Can the charge, without individual specifications, can the charge stand? I believe this is related to our argument that Chairman McPhee committed legal error when he surgically parsed her statements, that instead of looking at the nature of the disclosure itself, which was her interview with the Washington Post and the similar conversation with the congressional staffer, where she was conveying serious concerns regarding budget shortfalls and regarding what specific effects that was having on the public health and safety, that rather than examine and follow its own precedent, what the Board generally does is look at the nature of the disclosure itself. The Board doesn't parse out the individual sentences. The Board doesn't generally examine each individual component of the greater whole. What they look at is the greater whole. I think that that speaks to the issue of, can a charge stand? Does it make sense for a charge to stand if you individually parse them out? If the agency wanted to do that, they should have brought her up on individual specifications. So here you do have a charge where you have one Board member finding that at least half of the statements that provided the basis for the charge, he found protected disclosures. So we would take the position, in addition to case law that you pointed out, but that as a common-sense approach and as the approach that the Board takes generally, they look at the whole disclosure itself. Where does that leave us in terms of results? Is a remand required then to go back to the Board and do they have to reopen the record? Because nobody knows for certain what the deciding official would have done if he was only looking at two disclosures as opposed to four. Respectfully, I disagree. I believe the record reflects that the deciding official unequivocally stated and provided uncontroverted testimony that absent the three charges, two, three, and five, absent all three being sustained, he would not have removed her. Well, he said all three. He didn't go on to say, and I would only sustain charge two if every single statement in there were found non-protected. I mean, to say all the charges, he was referring to two, three, and whatever the third one was. But he wasn't referring necessarily to all portions of each individual charge, correct? Absolutely. But I understood your question to be that if you agree that charge two, if this Court agrees that charge two falls away, is remand necessary? I think what Judge Prost is asking you is, does it matter whether the deciding official, suppose part of the charge two activity is protected and part is unprotected. Do we have to find out whether the charging official would have sustained charge two based on the unprotected activity? Or does the charge automatically fall once part of it has to fall? I think that would be our position, that once part of charge two, particularly here when 50% of it falls, because Chairman McPhee has found that, and if this Court agrees, Chairman McPhee found that those were protected disclosures, that charge two in its entirety drops out. So it then becomes irrelevant if the deciding official would have said, well, if one sentence of charge two, if one disclosure, rather, one part of charge two still stands, and then maybe if we'd made a better argument and argued on charge three, I would have sustained the removal in any event. I think he provided, I think he provided very clear testimony. Let's assume we had testimony in the record that, and with respect to the individual charges in charge two, if any one of those statements was not protected, I would have taken the same action no matter what. And on that record, even though if we accept Chairman McPhee's analysis of what's protected and what's not protected, does the charge stand? I'm not sure if I understand. Let's assume there was record testimony. You refer to the deciding official saying we had to affirm all three of those charges. But if he also said if any portion of those charges individually is sustained, if it were only a particular portion of charge two, I nonetheless would have sustained the charge. Do we then say, even if we adopt McPhee's, that we're okay because we know that he would have taken the action in any event? If that were the single analysis, and I'd fall back on what my colleague was arguing in terms of whether or not they indeed met their burden, but let's assume that argument set aside. I suppose, yeah, if in the record he was able to identify what was the trigger for terminating her, and he was that specific where he said if statement one stays of charge two and three and five still stand, then, yeah, you have the evidence that he... So why wouldn't we need, if that's the case, then why wouldn't we need to remand in order to ascertain what he indeed thought? It's not like he said no if no statement. He didn't say the reverse. He didn't treat at all the different aspects of charge two. So why is a remand not necessary to ascertain whether that's the case or not? I think if this court determines that even, and agrees with Chairman McPhee, that two of the statements in charge two are protected, the entire charge falls. So then it doesn't, there's no analysis or there's no question to ask the deciding official, what if two of those statements stay in? Because the charge itself falls. What you're saying is that the charge automatically falls if part of it falls regardless of what the deciding official says. Absolutely. That would be our position. Absolutely. So there's no question to ask the deciding official because there are no, the charge itself is gone, even though only two of the statements are protected. You're saying, Michie, that's because each of these statements wasn't broken into a separate specification. And in addition to that, the argument that we make in our brief, which is that it's part of an entire whole. You can't surgically parse out the statements and examine her statements fragment by fragment. You could if they'd been separate specifications. Indeed, if they'd been separate specifications. But here what you had was an interview with the Washington Post where each of these statements is part of the greater whole, which are individual components making up the whole, which is budget shortfalls were causing critical problems and opposing serious and substantial dangers, specific and substantial dangers to the health and safety of the people visiting the parks. Thank you. Mr. Give some extra time if you need it because the other side is run over. Thank you. May it please the court. First, I want to point out that the decision that was issued by the board in this case begins with a joint decision where both board members say, although we don't agree on everything, we do agree on the conclusion. And we affirm those parts of the initial decision, except to the extent that they are modified. And then they each set up their separate opinions. So, for example, member Rose, while she only reaches the question of whether Miss Chambers made any protected disclosures and finds that she didn't, and therefore doesn't need to go further, still has affirmed the parts of the initial decision that she didn't get to. So we do have a final board decision on all of the issues in this case. And this court certainly, even if they find that Chairman McPhee, for example, came to the right conclusion with respect to which disclosures were protected and which were not, could affirm the board's decision on clear and convincing evidence, safe in the knowledge that member Rose's opinion affirmed the initial decision, so accepted that decision on clear and convincing evidence. And Chairman McPhee, of course, made his own decision on clear and convincing evidence, but they both came to the same conclusion. So we don't have any difficulty with that. But Vice-Chairman Rose doesn't say that she adopts part of the administrative judge's decision, right? She doesn't explicitly say she adopts it, but she does say that the initial decision is affirmed, except to the extent that she modifies it. But clearly she doesn't adopt it because she doesn't reach it. Exactly, she doesn't reach it, but she does. So she can't be adopting something that is absolutely unnecessary to the conclusions in her opinion. That's true, but she doesn't vacate that part. She doesn't say it's unnecessary to reach it, and I'm vacating everything that the administrative judge did. She does explicitly affirm the initial decision, except to the extent that she modifies it. So everything that she doesn't address is affirmed by her opinion. So let's assume Chairman McPhee had agreed with Vice-Chairman Rose, and therefore all we had was an opinion by the board saying none of this is protected, and they don't reach the issue of whether or not there was clear and convincing evidence. Would we be able to hear on appeal if we were to decide some of the disclosures were protected, or would we be able to go back, jump over the board, and go back to the AJ's opinion? Yes, because the board did say that they were affirming that decision, except to the extent that they disagreed with it. So they explicitly would affirm that that part of the initial decision that addressed the clear and convincing evidence. No, what if the board members found that none of the disclosures were protected, so the board said obviously we don't have to reach the issue, which obviously they don't, as to whether or not there's clear and convincing evidence that they would have taken the action in any event? Well, they don't have to reach it, but the initial decision, the administrative judge didn't need to reach it either. She found none of the disclosures were protected, but she went further and said, but in any event, I'm going to go ahead and address this issue and find that there was clear and convincing evidence, and the board just didn't repeat that. They said we're affirming that initial decision, except to the extent that we're modifying it, and so to the extent that they addressed some issues, those are the binding opinions of the board on those issues, but on those issues that they didn't address, when they affirmed the remainder of the initial decision, they are affirming the initial decision as to the clear and convincing evidence, and I believe that issue would be before the court, even if both board members had found that there were no protected disclosures. Suppose we reject that and we say that Vice Chairman Rose wasn't adopting that part of the initial decision. Where does that leave us? Well, we still have a board decision on clear and convincing evidence. The fact that Member Rose didn't feel necessary. Do we have to find that each of the two opinions can be sustained? No, I think the court could find that Chairman Rose came to the right conclusion on both the protected disclosures, and then go ahead and find that he came to the right decision on clear and convincing evidence. You're talking about McPhee, not Rose. I'm sorry, I misspoke. Yes, I did mean Chairman McPhee. That's correct. So we'd have to sustain the rationale of each of the two opinions. Not necessarily. I think the court could sustain the rationale of Chairman McPhee on both the protected disclosures if the court felt that he made the right decision. And don't we just have a decision of one board member on the would have taken the same action anyway point? Yeah, that's always a possibility, Your Honor. I mean, it's always a possibility, even on a remand, that board members will come to opposite conclusions on protected disclosures, even if they were three members. How can we say that that's the board decision if we don't know what Vice Chairman Rose would have said on that issue? Because it is the board decision that's before you. Member Rose didn't reach that because she didn't need to, but that is the board's decision on that issue. And even if only one board member reaches it, it is the board decision. Why don't you address the question of suppose we were faced with a board decision based on Chairman McPhee's opinion? And he says part of the activity charged in count two is protected and part of it is not protected. Can charge two be sustained under those circumstances? I'll give two answers to that question. First, yes, I would say that charge two still could be sustained, and I'm going to go explain that a little bit further, but I also want to get to the deciding official's testimony and how that also impacts on this. But to explain why I say charge two can be sustained, although, yes, there is some case law saying that when not all aspects of a particular charge are sustained, then the charge must fall. In this case, I really believe that would be elevating form over substance. The notice of proposed removal specifically set out individual statements. If our case law says it, you're saying we can ignore our case law? Well, I'm saying that in this case, even though the agency didn't insert the wording into the form saying specification one, specification two, specification three, they did set out individual statements. They didn't simply say. In other words, we should treat this as though they had separate specifications in the charge. That's what I'm saying, that to not do so would really be to be elevating form over substance because the agency did set it out. What case supports the notion that you can take a single charge and then we can break it up into separate specifications when the agency didn't? Well, Your Honor, I don't know that there's a case that says that. I don't know that there's a case that doesn't say that. There certainly are cases that would say that, of course, in general should not elevate form over substance. And in a case like this, where the agency sets out, separates the three statements that they are charging her with making, the effect is of three different specifications, even though the agency didn't put those subheadings in. There is case law that where you don't have separate specifications, and it's just all kind of lumped together in one ball of wax, that if, in that case, we would have a problem here if we only, if we went with the McPhee approach. I think that if the agency had, as you said, Your Honor, lumped everything together and said in charge to, you made statements to the Washington Post that we find unsavory or inappropriate and therefore we are removing you. And then Chairman McPhee had broken them down for purposes of analysis and found some predictive, some not. That would be a different situation. The agency didn't lump everything together and say you made statements to the Post. They said you made, you gave an interview to the Post in which you made the following statements, and they set out each statement separately, three specific statements. They set out three statements. They did. They set out three statements, Your Honor. He said two of the three were protected. He did say two of the three were protected. That's true. But the essence, he also found, I'm sorry, Your Honor. You had occasion to look at the cases in which we've said the whole charge falls and determine whether or not in that case the facts were different than ours, that the case, it wasn't, you know. How do we know that? Right. And, Your Honor, I have to confess that I had, did not review those cases before this argument this morning, so I. So if those cases are more, if the facts in the particular charges in those cases are more analogous to these, where if you wanted to, you could parse them out to specific specs, then that wouldn't give us any room to play with our precedent, would it? If that were the case, it wouldn't. I agree with that, Your Honor. My recollection, you know, I've done many of these cases, but I'm just going on vague recollection. I really cannot cite a case. I'd be the first to admit that, is that those were cases where the charges were all sort of, you know, with the charge, single charge, all of the facts were intimately related, not susceptible, being broken into, so that any one piece falling out logically meant that the charge couldn't be sustained. But in this case, where but for the agency, including those little headings, when you look at this charge, it looks just like a charge that has separate specifications because each statement is set out separately and one statement doesn't hinge on the other. They're just simply three separate statements that the agency was charging its chambers with making. So, again, to restate it, I believe that in this case that would be elevating form over substance and that, in effect, this charge is composed of three different specifications. Suppose we reject that and we say you can't break it out. And if we reject that, Your Honor, and if charge two falls, then it is not true that the rest of the decision would fall or that the penalty would have to fall. The deciding official's testimony in this case, which appears in the appendix that pages... Are you agreeing that even if charge two falls, the penalty of removal can be sustained? Absolutely, Your Honor. I'm looking at the deciding official's testimony, which is in the appendix at pages 442 to 443, and particularly on page 443 where he is being questioned by Administrative Judge Vogel. And he says, beginning on 442, he says that the three... He's asked, I'm sorry, at the bottom of page 442, are you saying that each of these charges standing alone would warrant the penalty of removal? And his answer is, no, I don't think he's saying that. Let me just see, because I'm not... I'm sorry, I was beginning at the very bottom of appendix page 442 when Judge Vogel starts asking the deciding official. And first he says that no single charge standing alone would warrant removal, that the three in particular together warrant removal. And the three he identifies are charges 2, 3, and 5, I guess. But then Judge Vogel asks, and this is at line 10 on page 8443, question, those were the three most important charges in your mind, and if those three were not sustained, what penalty would you have chosen? The answer, I would probably have proposed a suspension and perhaps a reinstatement into a position of less responsibility. So what he is saying is if those three, if all three were not sustained, he never answers or is asked, actually, well, what would you do if two out of the three were sustained? So if charge 2 fell, it would not necessarily be the case that the rest of the action would fall because both charges 5 and 6, which had nothing to do with protected disclosures, charge 5 was the multiple instances of failure to follow instructions. So what do we do with this record? Do we give them another chance? Do we reopen the record so that we can call this witness to the stand and he can tell us what he would have done? I believe that there is enough in the record for the court to sustain the penalty as reasonable and not outside the bounds of terrible reasonableness based on the charges. Which no one has done. Let me just be clear, no one, neither of the board members have done that analysis, right? Yes, I agree with that. And the AJ, I guess, didn't do it either. Everybody assumed that we were looking at these three, that charge 2 would not fall in order to sustain this. That is correct. So how can we second-guess the board on that point? Well, I guess, obviously, the other action would be for the court to remand it for the board to look at the penalty in light of less than all of the charges being sustained, and that certainly is not what I don't think the court has to do. We have to find that the board's decision that the penalty falls if charge 2 falls, we have to find that that was unsupported by substantial evidence, right? I'm sorry, could you ask that again, Your Honor? Since the board found that the penalty falls if charge 2 falls, in order to remand it to the board to give another chance, we'd have to hold that their decision in that respect had to be set aside because it wasn't supported by substantial evidence. I don't believe the board found that if charge 2 was not sustained, the penalty would fall. I thought you just said that everybody from the AJ through the board members assumed that that was the case. Oh, no, if I did say that, I misspoke. No, I think that's the argument that Ms. Chambers is making, but I think that that's not what was found, and I don't think that's even supported by the deciding official's testimony that I was just referring to. What did the board members say about what happens if charge 2 falls? The board members didn't address that because they found that charge 2 was sustained. They didn't say anything about that? No, well, Board Member Rose clearly didn't reach it because she stopped after her evaluation of disclosures, and Chairman McPhee first analyzed whether charge 2 could be sustained based on the non-protected disclosures, and once he found that it could be, he then went on and just simply said that the penalty was based on all four charges, all four of which were sustained, 2, 3, 5, and 6, and then he moved on to the clear and convincing evidence. Well, what he found on 826 is the agency has shown by clear and convincing evidence that it would have taken the same disciplinary actions against the appellant for her conduct, underlying charges 3, 5, 6, and the sustained portion of charge 2, but he didn't make any finding if we conclude that they couldn't rely at all on charge 2. Yes, I agree he did not make that finding. He did not make that finding. I do agree with that, yes, Your Honor. Of course, now there's three board members. Now there are three board members, yes, Your Honor. Yes, Your Honor. But it's not a matter of the board. I mean, you know more about these cases than I do. How does the board then analyze it? I mean, it's the question what the deciding official then would have done if faced with three of those four charges, and does the board then put itself in the position, or does it require reopening the record to find out what he says, and if so, whether that's sustainable? Right. Well, in the past when this court, again, my recollection, and I have done a lot of these cases, so it's just based on that, is that when this court does, in fact, not sustain a charge that the board sustained, they remand it to the board. The board does not remand it usually back to have another hearing on whether the deciding official, what they would have testified. Usually they just find whether the penalty was reasonable in light of the sustained charges, which is why I was kind of suggesting the court could even do that without remanding, but obviously the court could remand for the board to do that. They don't do that when the deciding official has said that he wouldn't have done it absent sustaining charge, too. Well, again, I... It's a question of how that testimony is interpreted. Yes, and I've already explained my interpretation of it, so I won't go back over that. No, what I was just saying is I think there are some cases where, as Judge Dyke was indicating, where it turns on what the deciding official said, where we've knocked out, say, one of three or four charges. It then goes to, I think it was La Chance, maybe I'm wrong, where there was a statement towards the end of the opinion where we talked about what we do when less than all of the charges stand. I don't... No, I agree with you, Your Honor, when there is that kind of testimony already in the record, and sometimes deciding officials do go through a very thorough analysis of, well, if only one charge is sustained, I would have done this, et cetera, et cetera, but when that doesn't exist, it's not... In my experience, I don't think that the remand carries all the way back through to the board, remanding it back to the administrative judge to take more testimony from the deciding official on that issue. I think the board just decides it based on the sustained charges. I'm not sure if I have much time left here, but with the time that I do, I want to make sure that the court understands that we didn't really spend a great deal of time on this in our brief, and I want to make sure that it's very clear that, despite the fact that we spent the majority of the time addressing Chairman McPhee's treatment of the disclosures, whether they were protected or not, that we do believe that Board Member Rose came to the correct conclusion in finding none of Ms. Chambers' disclosures protected. The court remanded this case to the board with instructions to apply a particular test to the disclosures. The board members did that. They applied that test, and notwithstanding the contentions in Petitioner's brief, they applied that standard correctly, and Board Member Rose found that the disclosures that Ms. Chambers made or the allegations that she made were simply not specific enough to disclose a specific and substantial danger, and that was the correct conclusion, and if the court agrees with that conclusion, obviously they don't need to reach any of these other issues. If there are no further questions, Your Honors, then I thank you. Thank you. Okay, Ms. Dinnerstein, you have three minutes. Well, first, I would like to say that the deciding official's testimony was not equivocal at all. He was asked, do you think each of these charges standing alone would warrant the penalty of removal? He says, no, I don't think I'm saying that, going on to the first page. I think what I'm saying is these three in particular together warrant removal, and then he goes on to say that if these three had not been sustained, he wouldn't have recommended removal. He would have recommended... But that's a little different. It is a little. It is, at minimum, ambiguous. I mean, to say that those three in particular warrant removal does not go on to say that any one of those three taken out of it would not warrant removal. Well, he does say these three together warrant removal, and he does say that not any one... Well, the last statement is just if those three were not sustained, what penalty would you have chosen? And he says, well, I don't think anybody's disputing that. I mean, if all three of those charges fell, then obviously removal would fall, too. But he does say these three together and that no one alone would. So that's the evidence we have on that. Also... Did either of the board members address this question? I don't believe that they did. Mm-hmm. The... And the AJ didn't address it either? No. I mean, they all... They did not assume that any of the charges would be found unwarranted. I also wanted to say that in terms of different specifications, that in the charges here, in Charge 5, there were different specifications. So the agency knew how to make different specifications when they wanted to, and they didn't with Charge 2. And addressing the protected activity and Rose's opinion, the finding of no protected activity whatsoever is completely contrary to the case law as to what constitutes protected activity with safety disclosures. This court and the board itself have found that these disclosures are not protected if they're speculative, if they're remote, if they're ill-defined, if they're not probable. Those words cannot possibly apply to dangers which have already materialized. And those were a lot of chambers' disclosures were things that had already happened. What in particular? How are you... So are you arguing against McPhee? No, McPhee did find that the already materialized dangers were protected. And I'm saying that given the case law and how you analyze what disclosures are protected and that the ones are not are the ones that are remote and speculative and ill-defined, you can't possibly find that already realized dangers are not protected. You're answering Ms. Stern's argument that there were no protected disclosures. That's right. In other words, you're saying Chairman McPhee was correct with respect to the two he found protected that related to increased accidents on the parkways and I think there was a statement about increased crime in smaller parks. Is that what you're referring to now, Ms. Sternstein? Yes, the disclosures that he found protected. Now, we would say that he stopped too soon at finding only already realized disclosures protected, but certainly Rose erred as a matter of law in finding that disclosures of things that had already happened were not specific enough. Thank you, Ms. Sternstein. Would counsel remain seated for just one moment? The panel now has the authority to order mediation in cases and that's what we're going to do here. We're going to withhold a decision in this case for 30 days and ask the parties to mediate using the court mediation program. Do you have any questions about that? Okay, thank you.